[No. A033782. First Dist., Div. Four. Aug. 20, 1986.]

ALAN H. ADLER et al., Plaintiffs and Respondents, v.
SHEILA ELPHICK, Defendant and Appellant.

644

## COUNSEL

Samuel E. Trosow for Defendant and Appellant.

Manuela Albuquerque, City Attorney, and Marjorie Gelb, Deputy City Attorney, as Amici Curiae on behalf of Defendant and Appellant.

Fred M. Feller, York, Buresh & Kaplan, James S. Ader and Jethro S. Busch for Plaintiffs and Respondents.

Thomas W. Birmingham as Amicus Curiae on behalf of Plaintiffs and Respondents.

## OPINION

**SABRAW, J.**—The issue decided in this case is that a "community apartment project" cannot be created informally. A community apartment project arises when an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon. We hold that the right to exclusive occupancy, which is a prerequisite to the creation of a community apartment project, must appear on the face of the deed in order for such an estate to be created.

Sheila Elphick appeals from a municipal court unlawful detainer judgment entered against her after the trial judge refused to allow the jury to consider her proposed affirmative defense that plaintiffs had created a community apartment project in violation of Berkeley's Municipal Code. We affirm.

## I. Facts and Procedure

Plaintiffs Alan H. Adler, Albert Adler and Judith Greenblatt purchased a residential property in Berkeley consisting of a main building containing two three-bedroom units and an adjacent three-bedroom cottage. They paid $240,000 for the property and took title as tenants in common. The Adlers and Ms. Greenblatt intended to occupy separate apartments on the property. Greenblatt gave the tenants in the unit she intended to occupy a notice of eviction and when they departed she moved into that unit. The Adlers, however, were unable to occupy the other unit because the tenant, defendant Elphick, refused to comply with the notice and vacate the premises. They then brought an unlawful detainer action against Elphick in the municipal court.

On the first day of the jury trial, Elphick tendered as an affirmative defense the contention that plaintiffs had created a "community apartment project" in violation of the Berkeley Municipal Code. The trial court heard argument and concluded that the community apartment project defense could not be presented to the jury because there was no evidence of individual exclusive ownership of any part of the property. The jury thereafter found that the Adlers were entitled to possession and awarded them damages. Judgment was entered accordingly.

Elphick appealed the judgment to the Appellate Department of the Alameda County Superior Court which reversed, holding that the trial court erred in not permitting the "community apartment project" defense to go to the jury. The matter was then certified by the superior court (Cal. Rules of Court, rule 63) and we ordered it transferred to us. (Cal. Rules of Court, rule 62.)

## II. Analysis

1. *A Violation of the Subdivision Map Act May Constitute a Defense to an Unlawful Detainer Action.*

Affirmative defenses may be asserted in unlawful detainer actions if they go to the issue of title (*Mortgage Guaranty Co.* v. *Smith* (1935) 9 Cal.App.2d 618, 619 [50 P.2d 835]) or possession of the subject property. (*Green* v. *Superior Court* (1974) 10 Cal.3d 616, 633, fn. 19 [111 Cal.Rptr. 704, 517 P.2d 1168].) No reported California decision prohibits a tenant

from interposing a defense which, if established, would result in the tenant retaining possession of the premises.

The Subdivision Map Act (Gov. Code, §§ 66410-66499.37) regulates the subdivision of real property and vests the power to regulate and control the design and physical improvements of a subdivision in the local governmental authority where the property is located. (*California Coastal Com.* v. *Quanta Investment Corp.* (1980) 113 Cal.App.3d 579, 588 [170 Cal.Rptr. 263].) Here, the real property in question is subject to regulation by the City of Berkeley under its rent control ordinance.

Berkeley's Subdivision Ordinance, promulgated under authority of the Subdivision Map Act (Gov. Code, §§ 66410-66499.37), provides that no application for conversion of a rental property to community apartments shall be accepted for filing by the city unless the vacancy rate in Berkeley is greater than five percent.[1] Because the vacancy rate at the time plaintiffs acquired the subject property was estimated to be less than 2.4 percent, the conversion of the property to a community apartment project by plaintiffs would have been prohibited. The Berkeley Subdivision Ordinance prohibited the eviction of a tenant from a rental unit except on certain specified grounds. One of the excepted grounds was occupancy by an owner. Thus, if Elphick had been able to prove that an unlawful conversion of her rental unit to a community apartment had occurred in violation of the Subdivision Map Act and the Berkeley Subdivision Ordinance, she would have defeated plaintiffs' claim to possession of the premises.

2. *The Trial Court Did Not Err in Refusing to Allow the Jury to Consider the Community Apartment Project Defense.*

Ownership of multiunit residential properties exists today in several legally cognizable and distinct forms, all generally known as "cooperative housing." In California most cooperative housing falls within the statutory term "common interest development." The definition of a common interest development is contained in the Civil Code which provides, in part, that it is "a real property development: (1) Which consists of or will consist of *separately owned* lots, parcels, areas or spaces . . . ." (Civ. Code, § 1351, subd. (c), italics added.)[2]

---

[1]Berkeley Municipal Code section 21.52.070 provides in relevant part that "no application for approval of a tentative subdivision map or parcel map to create a condominium project, a community apartment project or stock cooperative containing apartments which have been previously occupied as rental units shall be accepted for filing unless the vacancy rate is determined to be five percent or greater."

[2]This definition became effective on January 1, 1986. (Stats. 1985, ch. 874, § 14.) A reviewing court in California applies the law in existence at the time of decision rather than at the time the land-use decision being reviewed was rendered. (*Selby Realty Co.* v. *City of Buenaventura* (1973) 10 Cal.3d 110, 125 [109 Cal.Rptr. 799, 514 P.2d 111].)

California has produced one variant of cooperative housing, the community apartment, also known as the "deed plan." (*California Coastal Com. v. Quanta Investment Corp., supra,* 113 Cal.App.3d 579, 589.) A community apartment project is defined by statute as "a common interest development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon." (Civ. Code, § 1351, subd. (d).)[3] By comparison, a condominium is defined as an estate in property consisting of an undivided interest in common in a portion of a parcel of real property, together with a separate interest in space. (Civ. Code, § 783.)[4] A third type of ownership is the stock cooperative, an arrangement in which occupants own stock or shares in the entity holding title and occupy their respective residences or apartments by virtue of a lease. The concept of a "community apartment" like a condominium or stock cooperative, embraces a right of ownership in real property which is tantamount to a fee-like ownership; that is, something capable of being separately assessed for property tax purposes and of being separately conveyed.

■ Although Elphick argues that a "community apartment" may be created informally through an oral or written lease between the cotenants, or even by implication from their actions, we do not agree.[5] Instead we conclude that the right to exclusive occupancy of a particular unit must be specified on the deed itself in order for a "community apartment project" to be created.

Our review, and, in particular, the relevant literature dealing with the practical realities of how community apartment projects have been created convinces us that community apartment projects may not be created informally. For instance, in one article describing the tax implications of holding cooperative housing in its various forms, the author explained the history of such projects. "The term 'own your own' has sometimes been used as descriptive of the so-called 'tenancy-in-common' (TIC) or 'community

---

[3]Government Code section 66424 defines a community apartment project by reference to Business and Professions Code section 11004, which, in turn, now incorporates the definition stated in Civil Code section 1351, subdivision (d).

[4]One article on the subject of cooperative housing suggests that the only difference between condominiums and community apartments is the manner in which the several interest is held: "[I]n a [community apartment project created though a tenancy in common] it is an irrevocable license to occupy as opposed to the fee simple interest in a condominium." (Friedman & Herbert, *Community Apartments: Condominium or Stock Cooperative?* (1962) 50 Cal.L.Rev. 299, 341, fn. 329.)

[5]In support of her position, Elphick relies upon an unsupported assertion in one secondary source. See California Condominium and Planned Development Practice (Cont.Ed.Bar 1984) section 1.26, page 31. We note that another secondary source has adopted the same unsupported contention. See 1 Hanna, California Condominium Handbook (2d ed. 1986) section 24.2, pages 704-705.

apartment' plan to distinguish it from the cooperative plan of apartment ownership. Under the TIC format, each occupant receives a deed as tenant-in-common to an undivided interest in the entire real property composing the project, together with an exclusive right to occupy a particular apartment unit. Many of the TIC projects are of the 'garden court' or 'cluster' type, with a group of detached or semidetached single story buildings surrounding a common area. In projects of this sort, it is possible to give a traditional grant deed describing the individual unit by metes and bounds, with a tenancy-in-common interest only in the common areas—little more than a tract home with a community swimming pool. The TIC plan seems to have been most popular in Southern California, where there are a number of projects formed along these lines, many of them in the 'retirement' or medium price range. The earliest such project is said to date back to the late 1920's." (Armstrong & Collins, *Condominium—the Magic in a Word* (1964) So.Cal. Tax Inst. 667, 672-673, fns. omitted.) Another author has explained that "ownership in the apartment project is accomplished by deeds of undivided interests in the apartment property, with exclusive right to use a specific apartment." (Barber, *Co-op, the Deed Plan Community Apartment Project* (1961) 36 State Bar Journal 310; accord, 1 Rohan & Reskin, Condominium Law and Practice (1985) p. 1-12; Berger, *Condominium: Shelter on a Statutory Foundation* (1963) 63 Colum.L.Rev. 987, 1001-1002; see also 17 Ops.Cal.Atty.Gen. 79, 81 (1951); 11 Ops.Cal.Atty.Gen. 81 (1948).) Needless to say, the fact that the community apartment project form of cooperative housing has been frequently described as "the deed plan" provides further support for our conclusion that a community apartment may only be created by deed.

Here, plaintiffs have not created a community apartment project. The grant deed by which title was passed to plaintiffs created an undivided one-half interest in Greenblatt and a similar interest in the Adlers. The deed did not create any separate interests in the property or any right to exclusive occupancy of either unit. No plaintiff separately owns any one unit. Further, there was nothing in plaintiffs' real estate purchase contract which indicated that the Adlers would occupy one portion of the residence and that Greenblatt would occupy another. In fact, plaintiffs testified that their initial living arrangements are subject to later change and that they contemplate switching living quarters in the future. Finally, the Adlers actually make some use of the portion of the property in which Greenblatt resides.

Elphick's argument that plaintiffs have created a community apartment project is unsound. In effect, she is contending that every tenancy in common involving multiple dwelling units, where the owners agree, however informally, to occupy particular portions of the whole, is a community apartment project and subject to regulation under the Subdivision Map Act. Such a

rule would hopelessly complicate transfers of title to multiunit properties. Each transfer of title to such property might well require court adjudication regarding the intentions of past co-owners' concerning rights of exclusive occupancy in any of the units in order to determine whether a community apartment project had been created. Such a rule would also create problems regarding the durational requirement; i.e., does the community apartment project statute (Civ. Code, § 1351, subd. (d)) contemplate that the "exclusive occupancy" requirement need last for one month, for ten years, or for the life of the owner-occupier?

We do not believe that the statutory plan permits an exclusive occupancy agreement which can be created and rescinded at whim. Yet, that is precisely what defendant suggests in asserting that an oral agreement between tenants in common to occupy portions of a multiunit residential property creates a community apartment project. In our view, the key to the statutory definition of a community apartment project is the requirement that the undivided interest in land be "coupled with the right of exclusive occupancy of any apartment located thereon." (Civ. Code, § 1351, subd. (d).) In order for such an interest to remain coupled with the undivided interest in the land, the right to exclusive occupancy must be reflected in the deed creating the community apartment interest.

Finally, a community apartment project constitutes an estate in real property which "can be transferred only by operation of law, or by an instrument in writing . . . ." (Civ. Code, § 1091.) In this case, the fact that there was no evidence of a deed creating a tenancy in common along with exclusive rights to occupancy of particular apartments means the trial court was correct in declining to submit the community apartment defense to the jury.

### 3. *The Trial Court's Instruction on Damages Were Proper.*

█ Appellant contends that the trial court committed reversible error by instructing the jury that damages for wrongful possession need not be limited to the controlled rent level required by the Berkeley Rent Control Ordinance for the subject property. We disagree. It is well established that losses sustained after termination of a tenancy may be recovered, and that "damages awarded . . . in an unlawful detainer action for withholding possession of the property are not 'rent' but are in fact damages." (*Haig* v. *Hogan* (1947) 82 Cal.App.2d 876, 878 [187 P.2d 426].) Thus, a landlord is entitled to recover as damages the reasonable value of the use of the premises during the time of the unlawful detainer either on a tort theory or a theory of implied-in-law contract. (*Lehr* v. *Crosby* (1981) 123 Cal.App.3d Supp. 1, 9 [177 Cal.Rptr. 96].) It is also settled that rent control regulations have no application to an award of damages for unlawfully withholding

property. (*Haig* v. *Hogan, supra,* 82 Cal.App.2d at p. 878.) The trial court's instruction was proper.

### 4. *The Challenged Evidentiary Ruling Was Proper.*

■ Elphick contends that the trial court erred in excluding from evidence a letter sent to plaintiffs by the Berkeley Rent Board. She asserts that the letter indicates plaintiffs brought their unlawful detainer action against her in bad faith, with full knowledge that the property was not properly registered with the Rent Board under section 1349. The Rent Board's letter was in response to another eviction action that was subsequently dismissed. The only "good faith" issue before the trier of fact in this action was whether plaintiffs intended in "good faith" to occupy the property as their own principal place of residence.

The trial court's exclusive discretion to analyze and determine the evidentiary value of an offer of proof under Evidence Code section 352 is well established. (*Rosener* v. *Sears Roebuck & Co.* (1980) 110 Cal.App.3d 740, 756 [168 Cal.Rptr. 237]; *Huber, Hunt & Nichols, Inc.* v. *Moore* (1977) 67 Cal.App.3d 278, 295 [136 Cal.Rptr. 603]; *Cain* v. *State Farm Mut. Auto Ins. Co.* (1975) 47 Cal.App.3d 783, 798 [121 Cal.Rptr. 200].) In reviewing the trial court's discretion under Evidence Code section 352 to exclude otherwise admissible documentary evidence because it may confuse the jury, an appellate court may reverse the judgment only where there is a showing of a clear abuse of discretion. (*Wagner* v. *Benson* (1980) 101 Cal.App.3d 27, 36 [161 Cal.Rptr. 516].) No such showing has been made here. In exercising its sound discretion pursuant to Evidence Code section 352, the trial court found that admission of the letter into evidence would mislead the jury, bring up collateral issues and consume unnecessary time. We agree and hold that the exclusion of the letter was not an abuse of discretion.

The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.

On September 16, 1986, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied November 12, 1986.