[No. A101950. First Dist., Div. Five. June 22, 2004.]

JUN WAI TOM et al., Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and
Appellants;
SAN FRANCISCO TENANTS UNION, Intervener and Appellant.

676

**COUNSEL**

Dennis J. Herrera, City Attorney, Andrew W. Schwartz and Susan Cleveland-Knowles, Deputy City Attorneys for Defendants and Appellants.

Tenderloin Housing Clinic, Randall M. Shaw and Stephen L. Collier for Intervener and Appellant.

Law Offices of Andrew M. Zacks, Andrew M. Zacks, James B. Kraus; Law Offices of Paul F. Utrecht, Paul F. Utrecht; Herzig & Berlese and Barbara Herzig for Plaintiffs and Respondents.

**OPINION**

**STEVENS, J.**—The trial court ruled that a local San Francisco ordinance, seeking to discourage persons from acquiring private residential property using tenants in common (TIC) agreements, violated the constitutional rights of privacy and equal protection guaranteed by the California Constitution, and was preempted by the state Ellis Act, Government Code, section 7060 et seq. We affirm the judgment.

## I. *FACTS AND PROCEDURAL HISTORY*

There is no dispute concerning the relevant facts in this appeal, but certain background information is necessary for an understanding of the legal issues presented. In general, the co-owners of real property who are TIC each have an equal right to occupy their property. (See *Bakanauskas v. Urdan* (1988) 206 Cal.App.3d 621, 628–630 [253 Cal.Rptr. 764] (*Bakanauskas.*) Unless there is an agreement between the TIC to the contrary, no TIC could exclude any others from any part of the property. (*Ibid.*)

Due to the high cost of acquiring residential real property in certain California cities in the past decade, many home buyers acquire multi-unit buildings as TIC, and then the TIC make agreements among themselves, to give each owner an exclusive right of occupancy (ERO) in a particular dwelling unit within the overall TIC property. (See *Bakanauskas, supra,* 206 Cal.App.3d at pp. 628–630.)

The San Francisco Board of Supervisors passed the ordinance in issue in this appeal in order to discourage the use of TIC agreements in the conversion of rental housing to owner occupied housing, by regulating and forbidding such ERO agreements. The San Francisco City (City) ordinance requires that all parties to a TIC agreement have a right of access to all units on the property, i.e., they cannot agree to occupy separate units with an exclusive right of occupancy. The ordinance does this by amending the San Francisco Subdivision Code in numerous respects, by adding language to sections 1302, 1308, 1359, 1388, 1396, and 1396.1 so as to regulate and require recordation of ERO's.

The most relevant amendment is the new language of section 1316, subdivision (b) of the San Fransisco Subdivision Code, which provides: "An owner of an undivided interest in common in real property containing three

or more units shall not have the right of exclusive occupancy of any unit on the property except pursuant to an approved condominium, community apartment or stock cooperative subdivision."

The ordinance also contains exemptions from this rule for some, but not all, relatives, exempting persons who are "related to each other as grandparents, parents, brothers, sisters, children, grandchildren, or spouses, or are registered as Domestic Partners . . . ." The ordinance also exempts certain preexisting TIC's, established before July 15, 2001.

The effect of the ordinance is that unrelated persons who reside in multi-unit buildings subject to the ordinance would be required to share occupancy of their dwelling units with each other, or could not prevent other cotenants from entering their private living space.

Former Mayor Willie Brown initially vetoed the City ordinance, citing concerns as to its validity and wisdom, but the City Board of Supervisors overrode his veto.

Respondents in this appeal are homeowners, tenants, and landlords who desire to occupy or convert property using a TIC agreement, with an ERO for each of their separate units. They brought this action seeking a writ of mandate to overturn the ordinance, contending the ordinance violated their constitutional rights of privacy in their homes, violated equal protection principles, and was preempted by the state Ellis Act, Government Code sections 7060 et seq.

The lower court granted the writ of mandate, as well as the related motion for summary judgment, ruling that the ordinance was preempted by the statewide Ellis Act, and was in violation of constitutional rights to privacy and equal protection. This appeal followed.

## II. DISCUSSION

### A. THE CITY ORDINANCE VIOLATES THE CONSTITUTIONAL RIGHT OF PRIVACY IN THE HOME.

#### 1. Standard of Review

In granting the petition for writ of mandate and motion for summary judgment, the trial court ruled as a matter of law that the City ordinance constitutes a facial violation of the constitutional rights of privacy and equal

protection, and is preempted by the Ellis Act. We review such legal conclusions de novo. (See *Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672]; *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486–487 [59 Cal.Rptr.2d 20, 926 P.2d 1114].)

### 2. *The Constitutional Right of Privacy*

Article I, section 1 of the California Constitution provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

█ A privacy claim may be asserted by private citizens against a governmental entity. (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 20 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*).) "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Id.* at pp. 39–40.)

We must first determine as a question of law whether a legally recognized privacy interest exists. (*Hill, supra,* 7 Cal.4th at p. 40.) The second and third elements of the privacy claim—reasonable expectation of privacy and serious invasion—involve mixed questions of law and fact. (*Ibid.*) However, "[i]f the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." (*Ibid.*)

█ Even if a plaintiff establishes these *three elements* of an invasion of privacy claim, a defendant may negate any of the three elements by proving, as an affirmative defense, "that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." (*Hill, supra,* 7 Cal.4th at p. 40.) "The plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests." (*Ibid.*)

### a. *Legally Protected Privacy Interest*

"Legally recognized privacy interests are generally of two classes: (1) interests in precluding the dissemination or misuse of sensitive and

confidential information ('informational privacy'); and (2) interests in making intimate personal decisions or conducting personal activities without observation, intrusion, or interference ('autonomy privacy').￼" (*Hill, supra,* 7 Cal.4th at p. 35.)

■ We agree with the trial court that there is an "autonomy privacy" interest in choosing the persons with whom a person will reside, and in excluding others from one's private residence. Such was the case in *City of Santa Barbara v. Adamson* (1980) 27 Cal.3d 123, 126–134 [164 Cal.Rptr. 539, 610 P.2d 436] (*City of Santa Barbara*), where our Supreme Court held that a city could not constitutionally enforce a local ordinance that regulated the number or type of unrelated persons with whom adults chose to reside in a home.

The City does not directly dispute that privacy rights are implicated where the ordinance applies, but first suggests the ordinance would not apply to TIC's created before the effective date of the ordinance. This is true, but it is beside the point. Obviously, where the ordinance does not apply, it could not cause any privacy violation. Our focus is on persons and properties that would be affected by the ordinance. " 'The proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.' " (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 345 [66 Cal.Rptr.2d 210, 940 P.2d 797] (*American Academy*).)

The City further suggests that, even where the ordinance applies, any governmental invasion is "indirect and attenuated." According to the City, the ordinance "does not require plaintiffs to own a unit without an ERO. It simply forces plaintiffs to choose between a TIC without an ERO and numerous other forms of occupancy." The City suggests the respondents should instead acquire one of the several types of homes not affected by the ordinance, such as a single-family house; or a unit not affected by the ordinance, because the TIC was formed prior to the effective date of the ordinance; or respondents should convert their homes into condominiums.

However, we repeat the observation of our Supreme Court that the " 'proper focus of constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant.' " (*American Academy, supra,* 16 Cal.4th at p. 345.) The plaintiffs seeking legal abortions in *American Academy* could theoretically have had other courses they could have pursued, such as carrying their babies to term, or informing

their families of their intentions and seeking their consent, or seeking to qualify for some other exception to the law. However, because the state law in issue in *American Academy* was held to have improperly impaired the constitutional rights of the persons for whom the law was a restriction, it was unconstitutional. (*Ibid.*)

Similarly, in the present case, the respondents include persons for whom the ordinance is a very real restriction on their rights to enjoy privacy in their homes. If all of the respondents were financially able to afford single-family homes in the City, they could presumably buy other residences as well, but the entire purpose of a TIC is to allow home ownership to those who cannot afford single-family homes. Moreover, some persons presently live in multi-unit homes affected by the ordinance, and not in homes for which they could seek exemption under any exceptions to the ordinance. Even if the respondents were to convert their present homes into condominiums, this would require a waiting period of at least three years or more, under the City's ordinances, and during that time the respondents would remain affected by the ordinance, which would continue to restrict their privacy. Significantly, in *City of Santa Barbara, supra,* 27 Cal.3d at pages 126–135, our Supreme Court held that a city could not constitutionally enforce a local ordinance that regulated the number or type of unrelated persons with whom adults chose to reside in a home even though the plaintiffs in that case could have sought to legalize their situation under the local ordinance by seeking to qualify for another type of housing. (*Id.* at pp. 134–137.) Regardless of the possible groups of people who would not be affected by the ordinance or could seek an exemption from it, the question before us is whether the ordinance implicates the constitutional privacy rights of those who are subject to it. (See *id.* at pp. 131–134.) Thus, the ordinance's restrictions on privacy rights must be analyzed. (*Ibid.*)

The City also refers us to two cases to support its argument that no privacy right is implicated. We find these cases are distinguishable.

*Ortiz v. Los Angeles Police Relief Assn.* (2002) 98 Cal.App.4th 1288, 1312 [120 Cal.Rptr.2d 670] (*Ortiz*), is cited by the City as being instructive of the proposition that "indirect and attenuated impacts of government regulation on family relationships do not violate constitutional privacy rights." In *Ortiz*, the Second Appellate District upheld a conflict of interest rule of a private police benefits organization, which barred prison inmates or their spouses from employment as benefits administrators with access to confidential files regarding health and retirement claims of police officers. (*Id.* at pp. 1295–1296, 1312.) Ms. Ortiz, a benefits administrator, was given the choice of either

terminating her employment or her marriage plans with the inmate. She chose to terminate the employment and sue, alleging a violation of the state Constitution's right of privacy.

Ms. Ortiz had voluntarily disclosed the relationship to her employer when she asked for a day off to marry a person she described as a prison inmate. (*Ortiz, supra,* 98 Cal.App.4th at pp. 1300–1306.) *Ortiz* acknowledged that an employee who married a prison inmate had a legally protected privacy interest. (*Id.* at pp. 1302–1304.) However, under these circumstances, the court pointed out that permitting prison inmates to have access to confidential information about police officers "could jeopardize the personal safety of the officers." (*Id.* at p. 1313.) It therefore found no privacy violation, concluding that enforcement of the employer's conflict of interest rule against Ortiz was "a rational response to a legitimate employer interest." (*Id.* at p. 1295.) This conflict of interest policy, like an antinepotism rule, may properly require the employee to "choose between marriage and her job." (*Id.* at p. 1312.)

While *Ortiz* found a privacy interest was implicated, the privacy interest was outweighed by a legitimate employer interest in officer safety—a conflict of interest rule designed to protect the safety of peace officers. (*Ortiz, supra,* 98 Cal.App.4th at pp. 1312–1313.) The case under review does not involve conflicts of interest laws or antinepotism rules. Nor does the City claim that allowing persons to enjoy privacy rights in their homes "could jeopardize the personal safety" of others. (*Id.* at p. 1313.) Because the instant case involves privacy rights in homes, as opposed to employment that is subject to legitimate concerns regarding security issues, we do not view *Ortiz* as particularly instructive.

We also find the City's reliance on *Nieto v. City of Los Angeles* (1982) 138 Cal.App.3d 464, 469 [188 Cal.Rptr. 31], is misplaced. There, the Second Appellate District held that the California wrongful death statute, Code of Civil Procedure section 377, did not violate the constitutional rights of a woman who was the fiancée and living companion of the decedent. Because their marriage had not taken place, she had no standing to bring suit for her companion's wrongful death under the statute. (*Id.* at pp. 468–471.) The wrongful death statute was held to not violate privacy rights because, in the words of the Second Appellate District, "It is inconceivable that an individual's choice of living companion or form of living arrangement bears any relation to the existence or nonexistence of a remedy upon the companion's wrongful death." (*Id.* at p. 469.) The wrongful death statute was also found to not violate equal protection principles, as there was a valid basis for the classification and limitation of the right to sue, which could be asserted only by those who were most closely related by blood or marriage. (*Id.* at pp. 469–471.)

Of course, we do not consider a wrongful death statute, or a claim that the limitation of a right to sue to a spouse or other relative violates any constitutional principle. The question here is whether a constitutional right is implicated by an attempted governmental intrusion into privacy rights in homes. On this topic, our Supreme Court has ruled that such ordinances implicate privacy rights. (See *City of Santa Barbara, supra,* 27 Cal.3d at pp. 126–134.)

In analyzing the question of whether a privacy right is implicated, we find guidance in a recent decision of the Second District, *Coalition Advocating Legal Housing Options v. City of Santa Monica* (2001) 88 Cal.App.4th 451, 458–461 [105 Cal.Rptr.2d 802] (*CALHO*). We find its analysis persuasive.

The ordinance under review in *CALHO* sought to regulate the types and numbers of persons who could reside in a multi-unit home on the same residential property. The question for the court was whether this local ordinance violated the constitutional right of privacy of homeowners. The Second District Court of Appeal, analyzing the issue under *Hill, supra,* 7 Cal.4th 1, and *City of Santa Barbara, supra,* 27 Cal.3d 123, found that the local ordinance unconstitutionally infringed the right of privacy in the home: "It is clear from [*City of Santa Barbara*] that the right to choose with whom to live is fundamental—not 'so insignificant or de minimis an intrusion' as to require no justification—and nothing in any subsequent case suggests otherwise. The suggestion that this right may be curtailed when the home is constructed with independent living facilities included is unpersuasive. The *Hill* threshold requirements are plainly met." (*CALHO, supra,* 88 Cal.App.4th at pp. 460–461, fn. omitted; see also *College Area Renters & Landlord Assn. v. City of San Diego* (1996) 43 Cal.App.4th 677, 691 [42 Cal.App.4th 543, 49 Cal.Rptr.2d 809, 50 Cal.Rptr.2d 515] (*CARLA*) [noting in dicta that "any laws which involve intrusion into the inhabitation of bedrooms and living rooms would likely trigger privacy concerns."].) Guided by the rationale and logic of *CALHO,* we conclude this threshold requirement of a privacy violation is clearly met.

### b. *Reasonable Expectation of Privacy*

" 'The extent of [a privacy] interest is not independent of the circumstances.' " (*Hill, supra,* 7 Cal.4th at p. 36, citing *Plante v. Gonzalez* (5th Cir. 1978) 575 F.2d 1119, 1135.) Other factors, such as advance notice of an impending action, may impact a person's reasonable expectation of privacy. (*Hill, supra,* at p. 36.) "In addition, customs, practices, and physical settings surrounding particular activities may create or inhibit reasonable expectations of privacy." (*Ibid.*) "A 'reasonable' expectation of privacy is an objective

entitlement founded on broadly based and widely accepted community norms." (*Id.* at p. 37.) "Finally, the presence or absence of opportunities to consent voluntarily to activities impacting privacy interests obviously affects the expectations of the participant." (*Ibid.*)

First, it is obviously reasonable to expect privacy in one's own home. (See *Hill, supra,* 7 Cal.4th at p. 36; *CALHO, supra,* 88 Cal.App.4th at pp. 460–461; *City of Santa Barbara, supra,* 27 Cal.3d at pp. 126–134 [City could not constitutionally enforce a local ordinance regulating the persons with whom adults chose to reside in a home.]; *Atkisson v. Kern County Housing Authority* (1976) 59 Cal.App.3d 89, 98–99 [130 Cal.Rptr. 375] [Constitutional right of privacy applied to invalidate local rules regulating unmarried cohabitation.]; cf. also *CARLA, supra,* 43 Cal.App.4th at p. 691.)

The City claims there is no reasonable expectation of privacy, because under common law principles, cotenants are equally entitled to share possession of the entire property, absent an agreement to the contrary among the cotenants creating an exclusive right of occupancy. (See *Bakanauskas, supra,* 206 Cal.App.3d at pp. 628–630.) However, the relevant legal issue presented here concerns TIC's who do desire to have privacy in their homes, and have an agreement among themselves for an ERO in their dwelling units. This is the relevant group—TIC owners who desire to have privacy by an ERO agreement among themselves—which is restricted by the City ordinance, and this group must be the focus of our inquiry. (*American Academy, supra,* 16 Cal.4th at p. 345.) As to this relevant group, we believe that the desire to have privacy in the home, pursuant to agreement among the cotenants, is a reasonable one. (See *Hill, supra,* 7 Cal.4th at p. 36; *CALHO, supra,* 88 Cal.App.4th at pp. 460–461.)

The City also suggests the privacy invasion caused by the ordinance is not "serious," inasmuch as some persons might consent to it. We address the City's argument concerning the seriousness of the privacy invasion in more depth in the next section of this opinion. However, for present purposes of assessing the reasonableness of the expectation of privacy in the home, we point out that respondents obviously did not consent to any intrusions into their privacy, and the concept of consent appears to be misplaced. No reasonable person would consent to having neighbors or other unwanted persons wandering through one's home or occupying it. Indeed, one purpose of the ordinance was to discourage the use of TIC's by placing the nonconsensual condition of lack of privacy upon their use. We again emphasize that we are dealing with the home, which has traditionally been subject to the highest protection against intrusions. (See *CALHO, supra,* 88 Cal.App.4th at pp. 460–461; *City of Santa Barbara, supra,* 27 Cal.3d at pp. 128–130; *People v. Dumas* (1973) 9 Cal.3d 871, 881–882, 109 Cal.Rptr. 304 [512 P.2d

1208]; *People v. Rodriguez* (2000) 77 Cal.App.4th 1101, 1106 [92 Cal.Rptr.2d 236].) We therefore conclude that the surrounding circumstances support the trial court's ruling on this issue of the reasonableness of the expectation of privacy in the home. (See *Hill, supra,* 7 Cal.4th at p. 36.)

### c. *Seriousness of the Invasion*

The last threshold element under *Hill* involves the seriousness of the invasion of privacy. "No community could function if every intrusion into the realm of private action, no matter how slight or trivial, gave rise to a cause of action for invasion of privacy. 'Complete privacy does not exist in this world except in a desert, and anyone who is not a hermit must expect and endure the ordinary incidents of the community life of which he is a part.' [Citation.] Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." (*Hill, supra,* 7 Cal.4th at p. 37.)

As we have indicated, the City suggests this privacy invasion is not "serious." According to the City, persons may choose whether to "consent" to or "forgo" such an invasion of their privacy, by deciding whether or not to buy a home affected by the City's TIC ordinance.

The City's argument for application of an implied consent doctrine in this context seems misplaced. If the City ordinance did not affect or apply to a certain property, then obviously there would be no question of any privacy violation. We are concerned, however, only with homes that *were* potentially subject to the City ordinance. As to them, we agree with the trial court that having unwelcome persons residing in one's home, or roaming throughout one's home, would amount to a serious invasion of privacy rights. (See *Hill, supra,* 7 Cal.4th at p. 37.)

The City's argument is also misplaced because the main purpose of the ordinance was to prevent, discourage or limit the use by homeowners of the Ellis Act—the City did not expect or wish homeowners to consent to the privacy violation in issue. It employed a limitation on privacy to force nonconsenting homeowners to consent to the new restrictions on TIC's in the future, or not invoke the Ellis Act. There is no precedent for such an expansive and counterintuitive concept of "consent" in privacy cases relating to the home. Such mandatory state intrusions and regulations have not historically been permitted. (See *City of Santa Barbara, supra,* 27 Cal.3d at pp. 126–134; *CALHO, supra,* 88 Cal.App.4th at pp. 460–461.)

To support its "consent" argument, the City relies on the very different factual setting of *Hill, supra,* 7 Cal.4th at pages 41–44, which dealt with drug

testing of elite athletes, not with a state intrusion into the private setting of the home. In *Hill*, our high court ruled that a National Collegiate Athletic Association (NCAA) drug testing program, which required athletes in certain competitive settings to submit a urine sample in the presence of a testing monitor or official of the same sex, could be justified. The court acknowledged several factors that led to its decision: the decreased level of privacy already present in athletics, where athletes traditionally would disrobe in a locker room, shower off, and dress, in the presence of persons of the same sex (*id.* at pp. 41–42); advance notice to and consent of the athlete to be tested was required for any testing observation; and the consequence of a refusal to consent was a ban on participation in certain types of optional NCAA sports competition, as to which there was no constitutional right to participate. (*Id.* at pp. 42–43.) Even so, an intrusion on privacy rights was found to exist, which required further inquiry into the countervailing justification for the intrusion. (*Id.* at p. 43.) *Hill* found a strong countervailing interest or justification to support the testing program, based on the need to deter the use of potentially harmful, performance enhancing drugs in sporting events involving young people. (*Id.* at pp. 43–52.)

Here, all of the relevant factors weigh very differently from the *Hill* situation. The present case concerns privacy rights in the home, not in a public or semi-public athletic setting. We are not asked to consider privacy rights that have already been partially relinquished through one's consensual participation in a sporting event, and our case does not concern the minimal intrusion of a same-sex observation while dressing, such as had already become commonplace in locker rooms. And, of course, we do not consider one's participation in a sporting event where there is no constitutional right to compete. The present case instead concerns the home—a place that is traditionally protected most strongly by the constitutional right of privacy. (See *City of Santa Barbara, supra,* 27 Cal.3d at pp. 126–134; *CALHO, supra,* 88 Cal.App.4th at pp. 460–461.) Finally, as we discuss in the next section of this opinion, the City has not advanced any sufficient justification for this privacy violation. (See *Hill, supra,* 7 Cal.4th at pp. 41–44.)

### d. *No Sufficient Justification*

Because we conclude that respondents carried their burden of demonstrating a serious invasion of their reasonable privacy interests, the burden shifted to the City to show "that the invasion of privacy is justified because it substantively furthers one or more countervailing interests." (*Hill, supra,* 7 Cal.4th at p. 40.)

The City did not bear its burden of demonstrating a sufficiently strong countervailing interest, and in fact the City contends it had no duty under *Hill* to do so. We note, however, that the City does maintain in other related

contexts that it had an interest in enacting the ordinance in order to preserve rental housing, by limiting the right of homeowners under the Ellis Act to go out of the business of renting, and in possibly "protecting consumers" by explicitly stating that owners of TIC's were allowed to enter each other's homes. We will consider these factors as the City's expression of countervailing interests.

First, we find it difficult to understand how violating privacy rights protects the consumers whose privacy is being violated. The City must provide a justification for the privacy violation in issue, not simply a general assertion that a law might serve some possible public goal. (See *Hill, supra,* 7 Cal.4th at p. 40; *CALHO, supra,* 88 Cal.App.4th at pp. 460–461.) While providing more rental housing may be a laudable goal in the abstract, it is not a sufficiently strong countervailing interest for the City in these circumstances, for at least two reasons.

The state Ellis Act generally forbids local authorities from pursuing its arguably laudable goal by the particular means in question here. That act prevents local jurisdictions, such as the City, from passing ordinances that are intended to limit the right of landlords and homeowners to go out of the business of renting. (*Channing Properties v. City of Berkeley* (1992) 11 Cal.App.4th 88, 94–101 [14 Cal.Rptr.2d 32] [Ellis Act preempted a Berkeley city ordinance seeking to discourage and limit evictions of tenants by homeowners, despite the laudability of the goals of the ordinance.].) Consequently, the City has no strong countervailing interest in enacting and enforcing its ordinance, which was designed to carry out what is arguably a good purpose, but by a means legally forbidden to the City under state law. (See *ibid.*)[1]

■ Second, and more critically, a governmental interest in precluding homeowners from going out of the landlord business would not justify an extreme privacy violation, such as rendering homeowners unable to determine the persons with whom they should live, or forcing them to share their homes with others who are unwelcome. (See *Hill, supra,* 7 Cal.4th at p. 40; *City of Santa Barbara, supra,* 27 Cal.3d at pp. 128–134; *CALHO, supra,* 88 Cal.App.4th at pp. 460–461; cf. also *Cwynar v. City and County of San Francisco* (2001) 90 Cal.App.4th 637, 660–663 [109 Cal.Rptr.2d 233].) The City has failed to advance adequate countervailing interests, so as to justify the privacy invasion in issue.

---

[1] In this context we need not decide whether the City ordinance is completely preempted by the Ellis Act, and we simply observe that state law as embodied in the Ellis Act provides an overriding public policy that deprives the City of the required strong justification for the privacy violation resulting from the operation of the City ordinance. (See *Hill, supra,* 7 Cal.4th at p. 40; *CALHO, supra,* 88 Cal.App.4th at pp. 460–461.)

### e. *Feasible and Effective Alternatives*

Had the City met its burden of articulating a countervailing governmental interest, we would then proceed to the next stage of the *Hill* analysis: "The plaintiff, in turn, may rebut a defendant's assertion of countervailing interests by showing there are feasible and effective alternatives to defendant's conduct which have a lesser impact on privacy interests." (*Hill, supra,* 7 Cal.4th at p. 40.) Because the City did not bear its burden in this respect, we need not proceed to the question of whether respondents sufficiently rebutted the City's asserted countervailing interests.

### f. *Conclusion on Constitutional Privacy Violation*

A constitutional privacy violation was demonstrated, and the trial court properly ruled the City ordinance was unconstitutional on this ground. (See *Hill, supra,* 7 Cal.4th at pp. 39–40; *City of Santa Barbara, supra,* 27 Cal.3d at pp. 128–134 [invalidating local housing ordinance that violated constitutional right of privacy]; accord, *CALHO, supra,* 88 Cal.App.4th at pp. 460–461.)

## B. *OTHER ISSUES*

### 1. *Dismissal of Cross-appeal*

Respondents also filed a cross-appeal, arguing the trial court erred in overturning the entire ordinance, rather than just severing the unconstitutional portions of it. The cross-appeal has been dismissed by stipulation, after the completion of briefing, so we need not address the legal issues raised in it. (Order dated Dec. 24, 2003.)

### 2. *Judicial Notice Request*

Appellants requested that we take judicial notice of certain portions of the legislative history of the Ellis Act and its amendments. We find such judicial notice unnecessary, and the legislative history of the Ellis Act is irrelevant to our determinations, so we will deny the request for judicial notice. (See *Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1065 [31 Cal.Rptr.2d 358, 875 P.2d 73].)[2]

---

[2] Respondents also contended in the trial court that the City ordinance violated their equal protection rights, and was preempted by the Ellis Act. We have found the ordinance unconstitutional as a privacy violation, and therefore the additional questions of whether it is also unconstitutional as a violation of equal protection, or is preempted by the Ellis Act, are issues we need not address. (See *Finnie v. Town of Tiburon* (1988) 199 Cal.App.3d 1, 10 [244 Cal.Rptr. 581].)

### III. *DISPOSITION*

The judgment is affirmed. The request for judicial notice is denied. Costs to respondents.

Jones, P. J., and Gemello, J., concurred.

The petition of defendants and appellants for review by the Supreme Court was denied October 13, 2004.