[No. A111947. First Dist., Div. Three. June 6, 2007.]

NICOLE DARO et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
JAMES FOY et al., Real Parties in Interest.

[No. A112134. First Dist., Div. Three. June 6, 2007.]

JAMES FOY et al., Plaintiffs, Cross-defendants and Respondents, v.
GARY ROSSI et al., Defendants and Appellants;
NORTH BEACH PARTNERS LLC et al., Defendants, Cross-complainants
and Appellants.

**COUNSEL**

Zacks Utrecht & Leadbetter, Andrew M. Zacks and James B. Kraus for Petitioners, for Defendants and Appellants and for Defendants, Cross-complainants and Appellants.

No appearance for Respondent.

Tenderloin Housing Clinic, Stephen L. Collier and Dean Preston for Real Parties in Interest and for Plaintiffs, Cross-defendants and Respondents.

OPINION

McGUINESS, P. J.—In this action brought by tenants of an apartment building under California's unfair competition law (Bus. & Prof. Code,[1] § 17200 et seq.) (UCL), the trial court found that the appellant property owners had committed an unfair business practice by attempting to sell subdivided interests in property without obtaining the "public report" that must be provided to potential buyers pursuant to the Subdivided Lands Act (§ 11000 et seq.). The court described appellants' unfair business practice as purchasing residential rental properties, subdividing them through the vehicle of tenancy-in-common agreements accompanied by the right to exclusive occupancy of individual units, and then selling or attempting to sell the subdivided interests without complying with the Subdivided Lands Act. In order to create vacancy in the buildings they sought to subdivide and sell, appellants utilized the Ellis Act (Gov. Code, § 7060 et seq.) to evict the tenants and remove the buildings from the rental market. The court issued an injunction requiring appellants to comply with the Subdivided Lands Act before either offering their interests in the building for sale or exercising their rights under the Ellis Act to recover possession of the building from the tenants.

On appeal, the property owners contend the tenants lack standing to pursue a UCL claim premised on a violation of the Subdivided Lands Act. After Proposition 64, a private person has standing to sue under the UCL for unfair competition only if he or she "has suffered injury in fact and has lost money or property *as a result of* such unfair competition." (§ 17204, italics added.) Any threatened loss of the tenants' leasehold interests here resulted not from the owners' alleged noncompliance with the Subdivided Lands Act but instead from the owners' lawful exercise of their right to withdraw property from the rental market under the Ellis Act. The tenants lack standing under the UCL to seek relief based on a purported violation of the Subdivided Lands Act because their claimed injury does not result from the alleged violation of that statutory scheme. Accordingly, we shall reverse the order granting the injunctive relief.

FACTUAL AND PROCEDURAL BACKGROUND

Respondents (hereafter tenants) reside in a six-unit residential apartment building located at 424–434 Francisco Street in San Francisco (Francisco Street property). Four limited liability companies (LLC's),[2] along with

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

[2] The appellant LLC's are North Beach Partners LLC, WBGT LLC, Above Water LLC, and Cydonia Partners LLC.

petitioners Nicole Daro and Max Schultz, purchased the Francisco Street property from the tenants' former landlord, Louise Vasquez. Escrow closed on October 7, 2003. We will refer collectively to the owners of the Francisco Street property as the "owners," but where necessary to distinguish among the owners, we will refer to the appellant LLC's as the "LLC owners" and to Daro and Schultz by their names.

Appellant Gary Rossi is a real estate agent with a 50 percent ownership interest in one of the LLC owners. Appellant Gregory Todd Eichler is a principal in nonparty SF Duke Investments, which itself has an ownership interest in one of the LLC owners. Eichler's name initially appeared on the grant deed to the Francisco Street property. The inclusion of his name as an owner of record was an error by the title company, however, and the deed was subsequently corrected to omit his name.

Prior to the close of escrow, the owners executed a tenancy in common (TIC) agreement, which provided that each owner would have an undivided percentage interest in the Francisco Street property. The TIC agreement provided that four of the LLC owners, and Daro and Schultz together, would each have the exclusive right to occupy one of the six units. Because there were five undivided ownership interests in a property with six units, the TIC agreement provided that one of the LLC owners had the exclusive right to occupy two of the six units. While the deed to the Francisco Street property reflects that the owners hold their interests as tenants in common, nothing in the deed reflects or otherwise refers to the exclusive rights of occupancy created by the TIC agreement.

Daro and Schultz purchased their interest with the intent to make it their home. The LLC owners purchased their interests as investments for purposes of future sale. The LLC owners intended to create vacancies in the Francisco Street property, repair and remodel the units after the tenants left, and then sell their interests to owners who would occupy the units. The owners understood before the close of escrow that they might have to invoke the Ellis Act in order to create vacancies in the units. The owners also agreed to convert the Francisco Street property into condominiums at the earliest possible date.

When the owners acquired the property, all six units at the Francisco Street property were occupied by tenants. In order to recover possession of the premises, the owners invoked the Ellis Act on April 13, 2004, by serving

notices terminating tenancy on all of the tenants in the building. With one exception, the tenants resisted by refusing to comply with the notices terminating their tenancies.

After purchasing the Francisco Street property, Rossi had discussions with two tenants, Alane Castro and Christopher Larose, about purchasing interests in the building corresponding to the units they occupied. In December 2003, Rossi told Castro he was a representative of the owners and that she and her husband could buy into the TIC for a price of $500,000, with a price range not exceeding $100,000. The $100,000 variance was based upon the amount of improvements to be done and whether a parking space was available. Rossi and Castro spoke again on April 21, 2004, when Rossi once more mentioned the sale price. Castro understood she could buy her unit if she met Rossi's price. In May 2004, Rossi told Castro that "it wasn't going to be able to work" at the Francisco Street property but that he had other properties he could show Castro and her husband. Castro and her husband moved out of the Francisco Street property in response to the Ellis Act notice and are not parties in the underlying litigation.

In November 2003, Rossi spoke with Larose about purchasing a TIC interest at a location other than the Francisco Street property. Subsequently, they discussed purchasing Larose's unit at the Francisco Street property. In approximately February 2004, Larose asked Rossi "how much generally" his unit would sell for. Rossi told him $400,000 unremodeled. The scope of what was being offered was unclear because somebody told Larose that a planned garage for the building would affect the physical layout of the unit he occupied. Larose stated he "really couldn't have afforded" to buy his unit and did not think there was the opportunity to do so. Rossi denied offering to sell units to any tenants, although he admitted he had general discussions with Larose regarding his ability to purchase a unit in a TIC.

The tenants filed suit against the owners, Rossi, Eichler, and their former landlord, Vasquez (collectively, defendants), on June 25, 2004. They alleged two primary claims. In the first cause of action seeking injunctive relief under the UCL, the tenants contended that all the defendants had committed an unfair business practice by violating the Subdivided Lands Act. The tenants also included causes of action against the owners and Eichler relating to habitability issues arising out of alleged substandard conditions at the Francisco Street property.

In the UCL cause of action, the tenants alleged that defendants had—as was their "regular practice"—divided the Francisco Street property into five

or more TIC interests for the purposes of sale. The tenants asserted that defendants failed to notify the Real Estate Commissioner of their intention to sell subdivided interests and failed to obtain a public report from the Department of Real Estate before creating the subdivided interests and offering them for sale, both in violation of the Subdivided Lands Act. The tenants further alleged that defendants had structured their business practices in order to avoid complying with the Subdivided Lands Act and had engaged in similar violations of the Subdivided Lands Act at other properties. The UCL cause of action did not describe the owners' attempt to recover possession pursuant to the Ellis Act as unfair, unlawful, or deceptive. Indeed, nowhere in the complaint did the tenants even mention that the owners had exercised their rights under the Ellis Act to recover possession of the Francisco Street property. Further, while they sought an injunction to prevent further violations of the law "with respect to the ownership and sale of real property," they did not specifically seek to enjoin the Ellis Act evictions.

The owners, Rossi, and Eichler answered the complaint and cross-complained against the tenants for declaratory relief and ejectment based on their invocation of the Ellis Act. They sought a declaration that their notices terminating the tenancies complied with applicable provisions of the San Francisco rent control ordinance. The ejectment claim was based on the tenants' failure to vacate in response to the Ellis Act eviction notices.

The tenants dismissed all claims against their former landlord, Vasquez, pursuant to a settlement. On March 16, 2005, the owners, Rossi, and Eichler amended their answer to assert a defense that the tenants lacked standing to bring a UCL claim after the passage of Proposition 64 in November 2004.

Petitioners Daro and Schultz moved for summary adjudication of issues on the UCL cause of action. The trial court granted summary adjudication for Daro and Schultz, finding that (1) their purchase of a unit in which they intended to reside was not a business practice; (2) their purchase did not require compliance with the Subdivided Lands Act; and (3) the tenants were not harmed by any alleged violation of the Subdivided Lands Act and therefore had no standing under the UCL after the passage of Proposition 64.

The trial court thereafter conducted a bench trial focusing on the tenants' UCL claim and the owners' claim concerning the sufficiency of the notices terminating tenancy. The court found that the LLC owners, Rossi, and Eichler had engaged in an unfair business practice. The court also found that the

language in the termination notices regarding relocation payments was adequate and in compliance with the San Francisco rent control ordinance.

The trial court found that the purchase of the Francisco Street property from Vasquez created five undivided interests in the property. Upon finding that the LLC owners intended to resell their respective interests, the court concluded that the manner in which the property was purchased created a subdivision subject to the requirements of the Subdivided Lands Act.

The court further found it was undisputed that the owners did nothing to comply with the Subdivided Lands Act either with respect to the Francisco Street property or any other similar property they owned. The court concluded based on the weight of the evidence that Rossi and Eichler, through their various business interests and LLC's, had acquired and treated other properties in a manner similar to their approach to the Francisco Street property. The court held that "[d]efendants' practice of purchasing property, subdividing it into five or more subdivisions through the vehicle of a tenancy in common agreement with exclusive rights of occupancy, and then selling the separately owned tenancy in common interest without complying with the [Subdivided Lands Act] is an unfair business practice. [Citation.]"

The court noted the "illegality is not in obtaining property [as tenants in common with exclusive rights of occupancy], but it is in obtaining the property in such a manner with the intent to resell the individual interests and then proceeding to sell or offer for sale those interests without complying with the [Subdivided Lands Act]." As for the owners' invocation of the Ellis Act, the trial court stated that "[i]n and of itself, utilization of the provisions of the Ellis Act to secure vacancy in a building for newly formed tenancy in common interests is not legally objectionable." Nevertheless, the court described the Ellis Act evictions as "part and parcel" of the LLC owners' unfair business practice. Because the Ellis Act termination notices were "in furtherance of an unfair business practice," the trial court declared them to be void and without effect.

On the issue of standing, the trial court acknowledged that the issue of Proposition 64's retroactivity was then before the California Supreme Court. The trial court declined to decide the retroactivity issue, concluding that the tenants had suffered injury in fact by virtue of the threatened loss of their leasehold interests. Consequently, even if Proposition 64's amended standing requirement were held to be retroactive, the tenants would still have standing to pursue a UCL claim.

The court enjoined the LLC owners, Rossi, and Eichler from marketing, selling, offering to sell, or transferring any interest in the Francisco Street

property unless and until they had complied with the Subdivided Lands Act either by obtaining a public report or by securing an exemption from the Subdivided Lands Act's requirements.[3] The court further enjoined the LLC owners, Rossi, and Eichler from pursuing any efforts to recover possession of the property through termination notices issued pursuant to the Ellis Act unless and until they had obtained either a public report for the Francisco Street property or an exemption from the Subdivided Lands Act's requirements. The order clarified that the terms of the injunction did not apply to the undivided interest in the Francisco Street property owned by Daro and Schultz.

The LLC owners, Rossi, and Eichler timely appealed the order granting the injunction. Daro and Schultz did not file an appeal, apparently upon the assumption they lacked standing to appeal an injunction that specifically excluded their property interests from its scope. Instead, they sought extraordinary writ relief challenging the injunction, arguing that the injunctive relief, while not specifically directed at them, nevertheless prevented them from invoking their rights under the Ellis Act to leave the rental business.[4] They

---

[3] The order granting injunctive relief is titled a "preliminary injunction." Notwithstanding the parties' and the trial court's characterization of the order as a "preliminary injunction," it was not issued to maintain the status quo but was instead a final determination on the merits of the UCL cause of action. As such, it is properly considered a permanent injunction. (See *Benasra v. Mitchell Silberberg & Knupp* (2002) 96 Cal.App.4th 96, 110 [116 Cal.Rptr.2d 644].) To avoid suggesting the trial court's order is a preliminary injunction, we have abstained from describing it as such in this opinion.

We observe that the characterization of injunctive relief as either preliminary or permanent may bear upon whether an order denying or granting that relief is appealable. (Compare *Department of Fish & Game v. Anderson-Cottonwood Irrigation Dist.* (1999) 8 Cal.App.4th 1554, 1560 [11 Cal.Rptr.2d 222] [order denying *preliminary* injunction appealable] with *Bishop Creek Lodge v. Scira* (2000) 82 Cal.App.4th 631, 633 [98 Cal.Rptr.2d 398] [interlocutory order denying *permanent* injunction not appealable].) In assessing whether an order is appealable, the inquiry turns on the substance and effect of the order and not on what the parties have chosen to call it. (Cf. *Los Angeles Times v. Alameda Corridor Transportation Authority* (2001) 88 Cal.App.4th 1381, 1388 [107 Cal.Rptr.2d 29].) Mindful that the order's proper characterization as a permanent injunction may raise a question about whether it is appealable (because it is an interlocutory order entered before a final judgment), we have satisfied ourselves that we possess jurisdiction to address the issues raised on appeal. (See *Guntert v. City of Stockton* (1974) 43 Cal.App.3d 203, 207–209 [117 Cal.Rptr. 601] [interlocutory order granting permanent injunction is appealable even though damages claims have yet to be tried].) In any event, even if there were a question about the order's appealability (see *Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 650–651 [4 Cal.Rptr.2d 689]), we would simply exercise our discretion to treat the appeal as a petition for writ of mandate and arrive at the same outcome (*Id.* at p. 651). Further, because we issued an order to show cause in a related writ proceeding (case No. A111947) raising the same issues as the appeal, we would have jurisdiction over this matter irrespective of the disposition of the appeal.

[4] The Ellis Act does not permit a landlord to withdraw from the rental market fewer than all of the accommodations in a building. (Gov. Code, § 7060.7, subd. (d).)

claimed they were forced to remain landlords against their will, were deprived of significant defenses in the second phase of the case addressing habitability violations, and were unable to pursue their ejectment claim. Their petition raises the same issues as the appeal and they have an obvious and beneficial interest in the outcome of the appeal and in setting aside the injunction. Accordingly, we issued an order to show cause why the petition should not be granted, ordered the writ petition consolidated with the appeal, and stayed further trial court proceedings on the habitability and ejectment claims.

DISCUSSION

### 1. Standard of Review

The issue presented on appeal is whether the tenants have standing under the UCL to pursue an action based on a threatened violation of the Subdivided Lands Act. The trial court's construction of the relevant statutes, including the UCL, the Subdivided Lands Act, and the Ellis Act, is subject to our de novo review. (See *Reis v. Biggs Unified School Dist.* (2005) 126 Cal.App.4th 809, 816 [24 Cal.Rptr.3d 393].) We review any factual determinations that bear upon the standing issue under the substantial evidence standard. (See *Taxpayers for Livable Communities v. City of Malibu* (2005) 126 Cal.App.4th 1123, 1126 [24 Cal.Rptr.3d 493].)

### 2. Statutory Framework

The trial court found that the LLC owners had committed an unfair business practice by violating the Subdivided Lands Act. The court further found that the LLC owners served eviction notices under the Ellis Act in furtherance of this unfair business practice. Thus, the issues raised in this appeal require us to consider the interplay among three statutory schemes: California's unfair competition law (§ 17200 et seq.), the Subdivided Lands Act (§ 11000 et seq.), and the Ellis Act (Gov. Code, § 7060 et seq.). We begin our analysis with an overview of the relevant aspects of these statutory schemes.

#### A. Unfair Competition Law

The purpose of the UCL "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949 [119 Cal.Rptr.2d

296, 45 P.3d 243].) Section 17200 defines unfair competition to "mean and include 'any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 et seq.)].' [Citation.]" (27 Cal.4th at p. 949.) Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, *or* fraudulent—to be considered unfair competition under the UCL. (§ 17200.)

The "unlawful" act prong of the UCL embraces " ' " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' [Citation.]" (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel-Tech*).) Thus, the UCL "borrows" violations of other laws and makes them independently actionable as unfair competitive practices. (20 Cal.4th at p. 180.) However, the law does more than just borrow. Under the "unfairness" prong of the UCL, "a practice may be deemed unfair even if not specifically proscribed by some other law." (20 Cal.4th at p. 180.) " ' "In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." ' [Citation.]" (*Ibid.*)

## B. *Subdivided Lands Act*

■ The subdivision of real property and the sale of subdivided property involve two separate statutory schemes. The subdivision of real property is regulated by the Subdivision Map Act (Gov. Code, § 66410 et seq.), which vests the power to regulate and control the design and physical improvements of a subdivision in the local governmental authority in which the property is located. (*California Coastal Com. v. Quanta Investment Corp.* (1980) 113 Cal.App.3d 579, 588 [170 Cal.Rptr. 263] (*California Coastal Com.*).) The sale of subdivided property is regulated by the Subdivided Lands Act (§ 11000 et seq.), which is administered by the Real Estate Commissioner. (*California Coastal Com., supra*, 113 Cal.App.3d at p. 589.)

The Subdivided Lands Act and the Subdivision Map Act define "subdivision" differently. (Compare Bus. & Prof. Code, §§ 11000 & 11000.1 with Gov. Code, § 66424.) Under the Subdivided Lands Act, "subdivided lands" and "subdivision" include "improved or unimproved land or lands, a lot or lots, or a parcel or parcels, of any size, in which, for the purpose of sale or lease or financing, whether immediate or future, *five or more undivided interests are created or are proposed to be created.*"[5] (§ 11000.1, subd. (a), italics added.) Thus,

---

[5] Subdivision (b) of section 11000.1 specifies certain conditions under which the creation or proposed creation of undivided interests in land may be exempt from the Subdivided Lands Act. As relevant here, section 11000.1, subdivision (b)(2) provides a "knowledgeable and experienced investor[]" exemption that requires, among other things, that all of the purchasers

fractional tenancy-in-common or joint tenancy interests created in the same parcel generally are considered subdivision interests under the Subdivided Lands Act. (9 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 25:6, p. 20 (Miller & Starr).) Unlike the Subdivided Lands Act, the Subdivision Map Act does not include within its scope the creation of multiple "undivided" interests in property, except to the extent that such interests qualify as a "condominium project, "a "community apartment project," or a "stock cooperative." (Gov. Code, § 66424.)

■ A "community apartment project" is defined as "a development in which an undivided interest in land is coupled with the right of exclusive occupancy of any apartment located thereon." (Civ. Code, § 1351, subd. (d).) While this definition appears to match the type of interest held by the owners here, the Francisco Street property is not a community apartment project because it lacks one critical feature of that form of ownership: Specifically, in a community apartment project the right to occupy an apartment to the exclusion of others must be specified in the deed. (*Adler v. Elphick* (1986) 184 Cal.App.3d 642, 647–648 [229 Cal.Rptr. 254].) A development in which an undivided interest in property is coupled with an exclusive right of occupancy in any apartment does not qualify as a community apartment project if an owner's exclusive occupancy right is specified by a separate agreement that is not contained or referenced in the grant deed. (*Ibid.*)

■ Because the owners' exclusive rights of occupancy here were created by an agreement not contained or referenced in the deed, the Francisco Street property does not constitute a community apartment project. As a consequence, the Subdivision Map Act is inapplicable. Although the tenants do not suggest otherwise, we make the point for several reasons. First, it is important to clarify where the Francisco Street property fits within the various definitions of "subdivision" contained in the Subdivided Lands Act and the Subdivision Map Act. Second, we can rule out violations of the Subdivision Map Act as a predicate for a UCL claim. In this connection, we note that the Subdivision Map Act affords tenants of an apartment building that is being converted to a community apartment project the right to receive various forms of notice from the subdivider, including notice that the subdivider has applied for a public report with the real estate commissioner and that such a

---

expressly waive the protections of the Subdivided Lands Act in a signed statement provided to the Department of Real Estate. The parties here dispute the applicability and scope of this exemption. Because we conclude below that the tenants lack standing to assert a UCL claim premised on a violation of the Subdivided Lands Act, we need not and do not address whether the property owners may be able to avail themselves of this exemption to avoid the application of the Subdivided Lands Act.

report will be available upon the tenant's request. (Gov. Code, § 66427.1.) A tenant is also entitled to a right of first refusal to purchase the unit in which the tenant resides. (*Id.*, subd. (d).) When the Subdivision Map Act is inapplicable, as here, tenants do not possess these same notice and first refusal rights. The Subdivided Lands Act contains no comparable provisions pertaining to tenants.

Indeed, the Subdivided Lands Act is not intended to protect tenants but instead exists to protect purchasers of units in subdivisions from fraud, misrepresentation, or deceit. (See 9 Miller & Starr, *supra,* § 25:2, p. 13.) "The purpose of the [Subdivided Lands Act] is to prevent fraud and misrepresentation in the marketing of parcels of land by requiring disclosure of the financial risks and benefits of a transaction to proposed purchasers and lessees. [Citations.] To accomplish this, the Real Estate Commissioner issues public reports based on extensive disclosures made by the subdividers in connection with the parcels they offer for sale or lease. [Citation.]" (*California Coastal Com., supra,* 113 Cal.App.3d at p. 589; see also §§ 11010–11018.1.) A subdivider may not sell or lease, or offer for sale or lease, any parcels in a subdivision without first obtaining a public report. (§ 11018.2.) Any person who intends to offer subdivided lands for sale or lease must file an application for a public report with the Real Estate Commissioner. (§ 11010, subd. (a).) Violation of the Subdivided Lands Act is a crime. (§ 11023.)

■ The Subdivided Lands Act also requires any blanket lien or encumbrance on a subdivision to include a release clause so that purchasers of lots or parcels within the subdivision may obtain title to their lots or parcels free of the blanket lien upon compliance with the terms and conditions of their purchase agreement. (§ 11013.1.) A purchaser of a lot subject to a blanket encumbrance is subject to the risk of losing his or her interest as a result of a default by another lot owner subject to the same encumbrance. (9 Miller & Starr, *supra,* § 25:37, p. 85.) When the blanket encumbrance does not contain an unconditional release clause, a subdivider may not sell or lease lots or parcels within a subdivision unless the subdivider complies with one of several specified conditions intended to protect purchasers from the effects of a default by an owner subject to the same blanket encumbrance.[6] (§ 11013.2.)

A subdivider must clearly disclose that a purchaser of a unit in an undivided-interest subdivision has the right to rescind the purchase offer or

---

[6] For example, the subdivider may place the purchaser's funds in a neutral escrow, hold title to the property in trust under an agreement acceptable to the commissioner of the Department of Real Estate, or file a bond. (§ 11013.2, subds. (a)–(c).)

any contract resulting from that offer prior to midnight of the third calendar day following execution of the purchase offer. (§ 11000.2, subd. (a).)

A failure to comply with the Subdivided Lands Act does not render the sale of a subdivided interest void. Rather, in the event of noncompliance the purchase agreement is voidable at the option of the purchaser, who has the right to either affirm the agreement or declare it void and recover the sums paid less any allowable offsets. (*Drake v. Martin* (1994) 30 Cal.App.4th 984, 992 [36 Cal.Rptr.2d 704].)

### C. *Ellis Act*

"The Ellis Act . . . sets forth the procedure by which a landlord may go out of business by removing rental units from the market." (*Drouet v. Superior Court* (2003) 31 Cal.4th 583, 589 [3 Cal.Rptr.3d 205, 73 P.3d 1185].) The intent of the Ellis Act is to supersede the holding in *Nash v. City of Santa Monica* (1984) 37 Cal.3d 97 [207 Cal.Rptr. 285, 688 P.2d 894] (*Nash*), "so as to permit landlords to go out of business." (Gov. Code, § 7060.7.)

In *Nash,* our Supreme Court rejected a due process challenge to a procedure requiring landlords to obtain a removal permit from the City of Santa Monica before they could withdraw rental units from the market. (*Nash, supra,* 37 Cal.3d at p. 103.) In order to obtain a removal permit from the city, a landlord had to demonstrate that a fair return on investment could not be made if the unit were retained, that no low- or moderate-income persons would be displaced, and that removal of the units would not adversely affect the city's supply of housing. (*Id.* at pp. 100–101.) The dissent in *Nash* observed that the majority's holding "compel[led] a landlord to remain in business against his will" and gave the landlord "only the alternative of a forced sale." (*Id.* at p. 111 (dis. opn. of Mosk, J.).)

In response to *Nash,* the Legislature enacted the Ellis Act, which provides that no public entity shall by statute, ordinance, regulation, or other administrative action "compel the owner of any residential real property to offer, or to continue to offer, accommodations in the property for rent or lease . . . ." (Gov. Code, § 7060.) "The legislative history of the [Ellis] Act consistently demonstrates the purpose of the Act is to allow landlords who comply with its terms to go out of the residential rental business by evicting their tenants and withdrawing all units from the market, even if the landlords could make a fair return, the property is habitable, and the landlords *lack approval for future use of the land.*" (*City of Santa Monica v. Yarmark* (1988) 203 Cal.App.3d 153, 165 [249 Cal.Rptr. 732], italics added.) ·

The right to withdraw residential property from the rental market is subject to certain other laws. (Gov. Code, § 7060.7.) Thus, for example, the Ellis Act is not intended to interfere with local authority over land use, including regulations governing the demolition and redevelopment of residential property, and regulations relating to the conversion of existing housing to condominium or other subdivided interests. (Gov. Code, § 7060.7, subds. (a), (b).) The Ellis Act does not override procedural protections intended to prevent abuse of the right to evict tenants (Gov. Code, § 7060.7, subd. (c)), and it does not relieve any party to a lease of the duty to perform any obligation under the lease (*id.*, subd. (e)). Further, the Ellis Act does not permit a landlord to withdraw from the rental market fewer than all of the accommodations in a building. (Gov. Code, § 7060.7, subd. (d).)

Although local governments retain the right to regulate a property's use *after* its withdrawal from the rental market, a local government may not condition the landlord's right to go out of business on compliance with local land use regulations relating to the future use of the property. (*Javidzad v. City of Santa Monica* (1988) 204 Cal.App.3d 524, 530–532 [251 Cal.Rptr. 350].) "What [a landlord] proposes to do with his property once he has gone out of the business of offering residential rental units has no bearing . . . in determining [the landlord's] right to decide to go out of that business and to invoke the protection extended him for this purpose by the Ellis Act. [Citations.]" (*Bullock v. City and County of San Francisco* (1990) 221 Cal.App.3d 1072, 1102 [271 Cal.Rptr. 44].)

### 3. *Standing*

Under prior law, any person acting on behalf of the general public could sue for relief under California's unfair competition law. (Former § 17204, as amended by Stats. 1993, ch. 926, § 2, p. 5198.) At the general election held on November 2, 2004, voters approved Proposition 64 and modified the UCL's standing requirement to provide that a private person has standing to sue only if he or she "has suffered injury in fact and has lost money or property as a result of such unfair competition." (§ 17204, as amended by Prop. 64, § 3.) The amended standing provisions apply to cases already pending when Proposition 64 took effect. (*Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227 [46 Cal.Rptr.3d 57, 138 P.3d 207].)

■ The owners contend the tenants have no standing under the UCL because any actual or threatened loss of money or property did not result from a violation of the Subdivided Lands Act. We agree.

■ In order to have standing to sue under section 17204, it is not enough for a private person to have suffered an injury in fact. Nor is it enough to establish standing if one has lost money or property. After Proposition 64, a private person has standing to sue under the UCL only if that person has suffered injury *and* lost money or property "*as a result* of such unfair competition." (§ 17204, italics added.) Thus, a private person has no standing under the UCL unless that person can establish that the injury suffered and the loss of property or money resulted from conduct that fits within one of the categories of "unfair competition" in section 17200.

■ Proposition 64's findings and declaration of purpose state: "It is the intent of the California voters in enacting this act to prohibit private attorneys from filing lawsuits for unfair competition where they have no client who has been injured in fact under the standing requirements of the United States Constitution." (Prop. 64, § 1, subd. (e).) "To prove standing under Article III [of the United States Constitution], a plaintiff must show (1) injury in fact, (2) a *causal connection* between the injury and the conduct complained of and (3) a likelihood that the injury will be redressed by a favorable decision. [Citation.] As a general rule, a party may assert only his or her own rights and cannot raise claims on behalf of parties not before the court. [Citation.]" (*Get Outdoors II, LLC v. City of San Diego* (2005) 381 F.Supp.2d 1250, 1258, italics added.)

Here, the unfair competition consists of an unlawful business practice—the LLC owners' alleged violation of the Subdivided Lands Act. The tenants are not among the class of persons the Subdivided Lands Act was intended to protect, and they have suffered no harm as a result of any violation of its provisions. In effect, they are attempting to assert claims on behalf of parties not present before the court—i.e., actual or potential purchasers of subdivided interests aggrieved by a violation of the Subdivided Lands Act.[7]

The tenants' threatened loss of a property interest resulted from the owners' invocation of their right under the Ellis Act to recover possession of the Francisco Street property. As the trial court recognized, the Ellis Act evictions in and of themselves were lawful based on the evidence presented thus far.[8] Nevertheless, the court went on to find that the Ellis Act evictions

---

[7] To the extent the dealings between Rossi and two tenants concerning the purchase of their units may be construed as a violation of the Subdivided Lands Act, the affected tenants would still lack standing to sue because they suffered no loss of property or money as a result of those dealings. Indeed, one of the affected tenants, Castro, is not even a party to this action. The other, Larose, admitted he could not have afforded to purchase his unit and did not think there was an opportunity to do so. None of the remaining tenants claims to be a prospective purchaser.

[8] At oral argument, counsel for the tenants pointed out it remains to be determined whether the Ellis Act evictions were lawful because the owners' ejectment causes of action have yet to be tried. While it may be true the legality of the Ellis Act evictions has not been fully

were "part and parcel" and "in furtherance" of the "unfair business practice." This finding, however, does not compel the conclusion the Ellis Act evictions were unlawful. An unlawful business practice is " ' " 'anything that can properly be called a business practice and that at the same time is forbidden by law.' " ' [Citation.]" (*Cel-Tech, supra,* 20 Cal.4th at p. 180.) A lawful business activity is not transformed into an "unlawful business practice" simply because it has some relationship to an activity forbidden by law.

When a UCL action is based on an unlawful business practice, as here,[9] a party may not premise its standing to sue upon injury caused by a defendant's lawful activity simply because the lawful activity has some connection to an unlawful practice that does not otherwise affect the party. In short, there must be a causal connection between the harm suffered and the unlawful business activity. That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law. Here, the lack of causation is illustrated by the fact the tenants would suffer the same injury regardless of whether the owners complied with or violated the Subdivided Lands Act. Indeed, even if the LLC owners fully complied with the trial court's injunction, the tenants would still face eviction.[10]

At oral argument, counsel for the tenants argued in effect that the tenants face eviction only because the owners choose to ignore the provisions of the

adjudicated, the fact remains there is no evidence in the trial court record to suggest the owners violated the Ellis Act in any respect.

[9] The tenants agree the UCL cause of action and the injunction are based on the "unlawful" prong of the UCL, not the "unfairness" prong. Nevertheless, the tenants elsewhere have sought to conflate the "unfairness" prong of the UCL with the "unlawful" prong, arguing that we are bound by the trial court's factual findings as to what constitutes an "unfair" business practice to the extent the findings are supported by substantial evidence. What constitutes an *unfair* or *fraudulent* business practice is a question of fact, with the " 'essential test being whether the public is likely to be deceived . ... .' [Citation.]" (*People v. McKale* (1979) 25 Cal.3d 626, 635 [159 Cal.Rptr. 811, 602 P.2d 731].) That test is inapplicable here, where the question is whether the owners engaged in an *unlawful* business practice. The trial court's finding that the Ellis Act evictions were "in furtherance of" a business practice that included some allegedly unlawful activities does not support the conclusion the evictions were themselves unlawful.

[10] The injunction does not absolutely forbid the Ellis Act evictions. Rather, the injunction merely prevents the LLC owners from recovering possession of the Francisco Street property pursuant to the Ellis Act until they have either obtained a preliminary public report or secured an exemption from the Subdivided Lands Act. In a petition for rehearing, the tenants claim they have standing under the UCL even though compliance with the injunction would not prevent them from being evicted. They reason one can infer the tenants' eviction would have been delayed if the owners had to comply with the Subdivided Lands Act. According to the tenants, if compliance with the law would delay their evictions by even one month, they have standing under the UCL. We are unpersuaded. First, they waived this argument (which is necesssarily fact based and not purely an issue of law) by not raising it earlier. (See *Gonzalez v. County of Los Angeles* (2004) 122 Cal.App.4th 1124, 1131 [19 Cal.Rptr.3d 381].) Second, the trial court made no finding that the timing of the tenants' evictions depended on whether the owners complied with the Subdivided Lands Act. In short, the tenants' argument comes too late and is too insubstantial to afford standing.

Subdivided Lands Act. The premise of the argument appears to be that the owners lack the ability to comply with the Subdivided Lands Act. Thus, the argument goes, there would be no incentive to evict the tenants (or buy the building in the first place) if the owners were foreclosed from selling their interests in the building as a consequence of their inability to comply with the Subdivided Lands Act. A fundamental problem with this argument is that the trial court made no finding that the owners lack the ability to comply with the Subdivided Lands Act. To the contrary, the trial court found there is no impediment to a landlord complying with both the Ellis Act and the Subdivided Lands Act.

To bolster their standing argument, the tenants rely on a trio of cases addressing the scope of injunctive relief under the UCL—*Hernandez v. Stabach* (1983) 145 Cal.App.3d 309 [193 Cal.Rptr. 350] (*Hernandez*), *Hewlett v. Squaw Valley Ski Corp.* (1997) 54 Cal.App.4th 499 [63 Cal.Rptr.2d 118] (*Hewlett*), and *People v. Murrison* (2002) 101 Cal.App.4th 349 [124 Cal.Rptr.2d 68] (*Murrison*). These cases do not aid the tenants. Because *Hernandez, Hewlett,* and *Murrison* predate the voters' approval of Proposition 64, they obviously do not address the amended standing requirements added by that initiative measure. It is true the cases stand for the proposition that a court possesses broad power to fashion injunctive relief under the UCL, including the ability to restrict certain activities related to proven UCL violations. (*Hernandez, supra,* 145 Cal.App.3d at pp. 313–315; *Hewlett, supra,* 54 Cal.App.4th at pp. 540–542; *Murrison, supra,* 101 Cal.App.4th at pp. 364–365.) However, these broad equitable powers do not afford standing to persons otherwise not entitled to sue under section 17204. Thus, for example, a party who has suffered no injury as a result of a UCL violation cannot create standing by arguing that a broad-based injunction designed to remedy the UCL violation will provide him or her some incidental benefit.

Furthermore, allowing tenants to challenge Ellis Act evictions on the basis of violations of unrelated laws frustrates the purpose of the act, which is to permit landlords the right to go out of the rental business. Under the Ellis Act, no public entity, including the state, may take any legislative or administrative action compelling a landlord to remain in the rental business. (Gov. Code, § 7060, subd. (a); see also Gov. Code, § 811.2 [defining public entity].) Thus, it would be improper for the Department of Real Estate to adopt a regulation conditioning a landlord's right to exit the rental business upon compliance with the Subdivided Lands Act. Such a regulation would "impermissibly condition[] the landlord's right to go out of business on compliance with requirements not found in the [Ellis] Act." (*Javidzad v. City of Santa Monica, supra,* 204 Cal.App.3d at p. 530.) Yet that is precisely what the tenants have done here. To permit such a result would allow private individuals to do in the guise of a UCL action what a public entity may not

do, i.e., preclude landlords from leaving the rental business until they satisfy conditions unrelated to the Ellis Act.[11]

Accordingly, we conclude the Ellis Act evictions do not afford the tenants standing to challenge any alleged violations of the Subdivided Lands Act.[12]

### DISPOSITION

The order granting the injunction is reversed. The stay of further trial court proceedings is dissolved, and the order to show cause in case No. A111947 is discharged. The matter is remanded to the trial court for further proceedings consistent with this opinion. Appellants in case No. A112134 and petitioners in case No. A111947 shall recover their costs on appeal.

Parrilli, J., and Pollak, J., concurred.

A petition for a rehearing was denied July 3, 2007, and the opinion was modfied to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied August 29, 2007, S154440.

---

[11] We do not suggest the Ellis Act supersedes the UCL. Government Code section 7060.1, subdivision (d) provides that the Ellis Act does not supersede a number of other statutory schemes, including the UCL. Our Supreme Court has interpreted the language of subdivision (d) of section 7060.1 to mean the Ellis Act is to be harmonized and construed together with the other statutory schemes identified in that section. (See *Drouet v. Superior Court, supra,* 31 Cal.4th at pp. 593–594.) It is beyond the scope of this opinion to identify circumstances in which a party may appropriately challenge an Ellis Act eviction in a UCL action. Suffice it to say that nothing prevents a party from seeking relief under the UCL in an appropriate case when the eviction itself is unlawful, such as when the landlord's invocation of the Ellis Act is used as a pretext to discriminate unlawfully against a tenant and there is no bona fide intent to withdraw the property from the rental market. (Cf. *Drouet v. Superior Court,* at pp. 599–600 [statutory defense of retaliatory eviction unavailing provided landlord has a bona fide intent to withdraw property from rental market].)

[12] Because we conclude the tenants lack standing to sue under the UCL, we need not address any of the parties' remaining arguments, including whether the LLC owners have violated the Subdivided Lands Act to the extent it may apply under the circumstances presented here. In this connection, we note that the LLC owners sought judicial notice of a Department of Real Estate guide concerning the public report application process, ostensibly to demonstrate they were not required to apply for a public report before evicting the tenants. In light of our holding that the tenants lack standing, the request is denied as moot.