Filed 12/16/14  Davis v. Wells Fargo Bank CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DANA L. DAVIS, | |
| Plaintiff and Appellant, | E058912 |
| v. | (Super.Ct.No. RIC1211508) |
| WELLS FARGO BANK, N.A., | **OPINION** |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Paulette Durand Barkley, Temporary Judge.  (Pursuant to Cal. Const., art. VI, §21.)  Affirmed.

Law Offices of Thomas Gillen, and Thomas W. Gillen for Plaintiff and Appellant.

Severson & Werson, Jan T. Chilton, Navdeep K. Singh, and Kerry W. Franich for Defendant and Respondent.

1

In 2005, Plaintiff and Appellant Dana Davis obtained a loan from Defendant and Respondent Wells Fargo Bank, N.A. (Wells Fargo) in order to purchase a home in Mira Loma. At that time, Wells Fargo caused an appraisal to be completed to determine the fair market value (FMV) of the home. A deed of trust in the amount of the loan was recorded encumbering the Mira Loma property. In July 2009, Davis sought a loan modification and defaulted on the loan. A notice of default was served on Davis and the home was eventually sold at a trustee's sale.

In a second amended complaint (SAC), Davis alleged causes of action for fraud, negative fraud and unfair competition under Business and Professions Code section 17200 (UCL) against Wells Fargo on the basis, as far as we can tell from the muddled presentation of her claims, that the appraisal prepared at the time the loan was funded, fraudulently overstated the true value of the Mira Loma property and was highly speculative as to the appreciation of the home in the future. She also alleged the financial elite, which presumably included Wells Fargo, knew that Wall Street speculators had caused artificially inflated home prices. Davis contended that she only agreed to buy the Mira Loma home and obtain the loan based on misrepresentations by Wells Fargo lending personnel. Respondent filed a demurrer.

After hearing the matter, the trial court granted Respondent's demurrer without leave to amend. Davis essentially claims on appeal that the trial court erred by sustaining the demurrer without leave to amend because (1) there were sufficient facts alleged to support the causes of action raised in the SAC; and (2) assuming the SAC was factually deficient, such deficiency could be corrected by subsequent amendment.

2

Davis's claims all are based on actions taken by Wells Fargo in 2005.  However, she did not file her first complaint until 2012.  We conclude that her causes of action are time-barred, and therefore, the demurrer was properly granted without leave to amend.

I

FACTUAL AND PROCEDURAL BACKGROUND

"When considering an appeal from a judgment entered after the trial court sustained a demurrer without leave to amend, we 'accept as true all well-pleaded facts in the complaint and give a reasonable construction to the complaint as a whole.' [Citations.]  In addition, we may consider matters that are properly the subject of judicial notice, and were considered by the trial court.  [Citation.]" (*La Serena Properties, LLC v. Weisbach* (2010) 186 Cal.App.4th 893, 897.)  The factual and procedural background is derived from the SAC.[1]

A.  *Mira Loma Transaction*

In January 2005, Davis and her then husband purchased a single-family home located at 11992 Silver Loop in Mira Loma.  They purchased the home for $607,000.  In order to finance the home, Davis obtained a loan in the amount of $485,484 from Wells Fargo.  Wells Fargo prepared an appraisal for the Mira Loma house.  The appraisal stated that the fair market value (FMV) of the house was $660,000.  Davis also obtained a

---

[1]  Although Wells Fargo filed a request for judicial notice of the grant deed to Davis and her then husband; the deed of trust; the notice of default; the notice of trustee's sale and the trustee's deed upon sale, the record does not reflect that the trial court granted the request.

3

second loan in the amount of $172,000, but no details about that loan are included in the record.

Wells Fargo transferred its interests in the loans to a trust, herein referred to as the Wells Fargo Trust. At some point, U.S. Bank, N.A. became the trustee of the trust.

Davis paid the monthly payment on the mortgage through July 2009. Davis then sought a loan modification from Wells Fargo. In November 2009, Wells Fargo caused a notice of default to be recorded indicating a deficiency in the mortgage payments. In December 2009, Davis hired Neighborhood Assistance Corporation of America (NACA) to help negotiate a loan modification. Davis asserted the "current" FMV was between $320,000 and $385,000.

In November 2011, Wells Fargo caused to be filed a notice of sale of the Mira Loma home. The alleged deficiency was $490,000. The sale date was continued. A new sale date of July 2, 2012, was set. On that day, the Mira Loma home was sold to U.S. Bank, N.A. for $385,000.

B. *Original Complaint and First Amended Complaint (FAC)*

On July 31, 2012, Davis, in propria persona, filed a complaint against Wells Fargo and NACA. Davis alleged causes of action for fraud and negligence against NACA. Against Wells Fargo, she sought to set aside the foreclosure. She alleged wrongful foreclosure and breach of implied covenant of good faith and fair dealing. Wells Fargo

4

filed a demurrer. On October 4, 2012, Davis, who had retained counsel, filed a statement of intent to file a first amended complaint in response to the demurrer.[2]

On October 9, 2012, Davis filed the FAC. The suit was filed against Wells Fargo, NACA, U.S. Bank, N.A. and First American Trustee Servicing Solutions. The FAC alleged causes of action against Wells Fargo and U.S. Bank for fraud and negative fraud. Davis alleged breach of contract against NACA. Against Wells Fargo, U.S. Bank and NACA, Davis alleged a violation of the UCL. Attached as the only exhibit was the agreement she apparently signed with NACA.

NACA filed a demurrer. Davis filed an opposition. The demurrer was denied and NACA was ordered to answer the complaint. NACA filed its answer.[3]

Wells Fargo filed a request for judicial notice in support of their demurrer to the FAC. The demurrer to the FAC is not part of the record. Davis opposed the demurrer. The demurrer to the FAC was granted but Davis was granted 30 days to amend.[4]

---

[2] Trial counsel in this case, Thomas W. Gillen, has raised these same claims in other cases. (E.g. *Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594.)

[3] NACA is not a party to the instant appeal.

[4] At this point, the demurrer was granted without leave to amend as to U.S. Bank and First American. They are not a subject of the instant appeal.

C.    *Second Amended Complaint (SAC)*

Davis filed the SAC on May 6, 2013.  She again alleged causes of action against Wells Fargo for fraud and negative fraud, and violation of the UCL.  Included in the SAC was a section entitled "Housing Bubble and Imputed Knowledge."  This provided a history of Freddie Mac and Fannie Mae instituting a pilot program to issue bank loans to individuals with low to moderate income and easing credit requirements.  These "subprime loans" secured by real property were sold to government sponsored entities (GSEs).  These loans were pooled together.  As a result, average national home value appreciation went from 5 percent in 1990 to 15 percent per year before collapsing in 2007.

According to the SAC, interest rates then increased and monthly payments (for some unknown persons) were no longer affordable; many of these loans were defaulted.  Davis alleged that the "financial elite" knew about this potential for disaster because of the numerous warnings from government officials between 2001 and 2008.

Davis alleged as to her claim of fraud, that in the period preceding the execution of the January 2005 loan documents, "Lending Personnel" from Wells Fargo, who were unnamed but included a vice-president, manager, appraiser, broker or employee authorized to process loans, made several misrepresentations to her.  As to negative fraud, she alleged that the Lending Personnel "knew of facts materially affecting the value or desirability of both the loan and the desirability of the property which were known or accessible only to" Wells Fargo.  These facts included the highly speculative nature of the appraisal and the "financial industries' ponzi scheme of continuing to inflate

6

real estate values to feed the sale of GSEs, etc. And the use of adjustable rate loans to seduce buyers into loans where after six years of payments, the original amount of the loan would not be reduced." Davis alleged that Wells Fargo had a duty to "voluntarily disclose these facts." Davis also claimed that Wells Fargo "knew the appraisal was highly speculative and was the only justification for the purchase loans. [Wells Fargo] knew that [Davis] was unaware of these facts. [Wells Fargo] knew that [Davis] was relying on the 'expertise' of both the appraiser and the lender." These undisclosed matters were both material to the transaction and affected the value and desirability of the deal.

As for actual fraud, Davis alleged that Wells Fargo represented that the Mira Loma home was worth $660,000 "knowing that, that value was highly speculative, that the valuation was not done by a truly independent appraiser, that the appraisal was poisoned with like speculative comparisons, and that the entire real estate home values were spiked by Wall Street marketing of home loans, . . . ." The representation was made with the "intent to deceive and defraud [Davis] and to induce [Davis] to finance her home purchase . . . ." Davis alleged that due to the fraud, she was entitled to have the $485,484 note cancelled and be permitted to obtain new financing based upon the current FMV of the Mira Loma home.

Finally, as to the UCL cause of action, she alleged that (1) Wells Fargo failed to disclose her loan would be sold to Wall Street speculators; (2) these speculators had created a highly inflated real estate market as previously alleged; (3) failed to disclose negative features of the loans as mandated by California and federal statutes and

7

regulations; (4) engaged in business practices that were unfair, deceptive, misleading and violated public policy and (5) Davis expended money because of the unfair and fraudulent practices. She attached a complaint filed by the state of California and other states against financial lending institutions, including Wells Fargo, and a consent judgment that Wells Fargo agreed to compensate affected borrowers. She claimed that the same conduct that Wells Fargo committed in the instant case was involved in that lawsuit. Wells Fargo agreed to a consent judgment rather than fight the allegations.

Davis sought to have the note executed on January 12, 2005 in the amount of $485,484 cancelled, the deed of trust cancelled and expunged from the records, the foreclosure sale vitiated and title to the Mira Loma house restored to her.

D. *Demurrer to SAC*

Wells Fargo filed its demurrer to the SAC on April 3, 2013. Wells Fargo alleged that the causes of action in the SAC failed to allege facts sufficient to support any of the causes of action, and the SAC was vague and uncertain. Wells Fargo also insisted that the fraud claims were barred by the three-year statute of limitations because the claims were based on the loan that was obtained in 2005. Wells Fargo provided that Davis had failed to allege that the appraisal was inaccurate, that she relied on any misrepresentation, and failed to properly plead any damages. As for negative fraud, Wells Fargo did not owe a duty to Davis. Further, as to the UCL claim, Davis filed the same claim as in the FAC without any change and it had already been dismissed.

8

E.      *Opposition to Demurrer to SAC*

Davis filed opposition.  Davis contended that she had shown fraud in the inducement.  Davis insisted she could rely on the appraisal because it was prepared by a professional.  Davis alleged for the first time that her damages were - - based on a reliance on the appraisal - - that she agreed to an adjustable rate mortgage.  She lost all of her equity in the home.

As for the statute of limitations, Davis contended the statute of limitations did not apply until the aggrieved party discovers the facts constituting the fraud.  The misrepresentations by Wells Fargo could not be discovered until "a significant amount of time had passed."  She also asserted, for the first time, that the UCL claim survived demurrer because numerous state and federal laws were violated by Wells Fargo.  Wells Fargo filed a response refuting these claims, including that Davis was bringing new and novel claims in the opposition.

F.      *Hearing on Demurrer*

A hearing on the demurrer was held on May 1, 2013.  The trial court tentatively ruled that it would sustain the demurrer without leave to amend.  Davis's counsel requested clarification of the order.  The trial court noted that it could not see that Wells Fargo owed any duty to Davis in preparing its own appraisal.  Further, Davis had already agreed to buy the home prior to seeking a loan from Wells Fargo.  Further, as to the UCL claim, there was no wrongful conduct committed by Wells Fargo.

The judgment was signed and entered the same day. On June 6, 2013, Davis filed her notice of appeal from the order granting the demurrer and dismissing the complaint without leave to amend.

## II

## STANDARD OF REVIEW

"On appeal from an order of dismissal after an order sustaining a demurrer, the standard of review is de novo: we exercise our independent judgment about whether the complaint states a cause of action as a matter of law. [Citation.] First, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. Next, we treat the demurrer as admitting all material facts properly pleaded. Then we determine whether the complaint states facts sufficient to constitute a cause of action. [Citations.] [¶] We do not, however, assume the truth of contentions, deductions, or conclusions of law. [Citation.]" (*Stearn v. County of San Bernardino* (2009) 170 Cal.App.4th 434, 439-440.)

"We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale. [Citation.]" (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631.)

III

STATUTE OF LIMITATIONS

Davis's claims are time-barred.[5]

A.    *Additional Factual Background*

It is undisputed that Davis's claims are all based on her insistence that Wells Fargo made misrepresentations and engaged in unfair business practices when she obtained a loan for the Mira Loma home in 2005.  Davis filed her original complaint on July 31, 2012, almost seven years after the fraud and unfair business practices were alleged to have occurred.

Davis filed the SAC on March 6, 2013.  Davis made only vague references as to when she gained knowledge of the causes of action.  She stated in general that "living in the financial industry's induced ignorance of their ponzi scheme, [she] made the monthly payments . . . through July 2009."  As to the UCL claim, she stated, "[a]nd, with reasonable diligence of an ordinary borrower of little sophistication, the plaintiff within the last four years discovered defendants' *fraudulent, unlawful, unfair, untrue, deceptive, and misleading representations.*"

In its demurrer to the SAC, Wells Fargo alleged that the fraud claim in the SAC was barred by the statute of limitations citing to Code of Civil Procedure section 338, subdivision (d).  In response, Davis stated that she had not immediately discovered the

---

[5]    For purposes of this argument only, we assume that Davis had valid claims of fraud and a violation of the UCL against Wells Fargo.  However, these similar claims of fraud and violations of the UCL have recently been rejected in *Graham v. Bank of America, N.A., supra,* 226 Cal.App.4th at pp. 604-619.

fraud. Specifically, she stated, "[t]he nature of the representations made to plaintiff were such that discovery of the falsity of those statements could not readily be identified until a significant amount of time had passed. Thus, even though defendant[']s initial fraud may have been successfully perpetrated as early as 2005, the statute of limitations could not have begun to run at that time." Davis also alleged equitable tolling of the running of the statute of limitations based on vague assertions that a party cannot hide the fraud until the statute had run. Wells Fargo responded that Davis had failed to allege any specific facts showing when she discovered the misrepresentation. The trial court made no statement as to the statute of limitations.

In her opening brief, Davis's contentions are all based on the misrepresentations and unfair practices committed by Wells Fargo when she obtained her loan in 2005. She has made no mention of the statute of limitations.

Wells Fargo, in its responding brief, has asserted that the fraud claim is time-barred, similar to the argument in the demurrer. In addition, for the first time, Wells Fargo argues that the UCL claim is also barred by the applicable four-year statute of limitations citing to Business and Professions Code section 17208.

In her reply brief, Davis's entire response to the statute of limitations issue is as follows: "Respondent's allegations regarding the statute of limitations, if accepted by this Court, are similarly capable of being addressed by subsequent amendment. There is no reason to believe that, as argued by Respondent, that the statute of limitations immediately began to accrue the instant [she] executed loan documents. *See Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 993 [no rational party enters

12

into a contract anticipating that they are or will be lied to].  Accepting [her] position that she lacked knowledge of the industry-wide fraud, a reasonable inference to be drawn in favor of the complaint would be that [she] could, if given the opportunity, be able to amend her complaint to allege a more certain date.  [She] should have been afforded the opportunity to amend her complaint and allege the circumstances entitling her to a finding of delayed discovery.”

B.      *Analysis*

Statutes of limitations “‘prescribe the periods beyond which’ a plaintiff may not bring a cause of action.  [Citations.]” (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395.)  “Under the statute of limitations, a plaintiff must bring a cause of action within the limitations period applicable thereto after accrual of the cause of action.  [Citation.]” (*Id.* at p. 397.)  Generally, a cause of action accrues, and thus triggers the statute of limitations, when it “‘is complete with all of its elements.’  [Citations.]” (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 806-807 (*Fox*).)  “We must take the allegations of the operative complaint as true and consider whether the facts alleged establish [the claim] is barred as a matter of law.  [Citation.]” (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).)

Davis’s cause of action for fraud is governed by the three-year limitations period set forth in section 338, subdivision (d).  (See also *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1391.)  Section 338, subdivision (d) provides that a “cause of action [for fraud] is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the

13

fraud or mistake." "The courts interpret discovery in [the] context [of fraud] to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information [that] would put a reasonable person on inquiry. A plaintiff need not be aware of the specific facts necessary to establish a claim since they can be developed in pretrial discovery. Wrong and wrongdoing in this context are understood in their lay and not legal senses. [Citation.] [¶] . . . "'Under this rule constructive and presumed notice or knowledge are equivalent to knowledge. So, when the plaintiff has notice or information of circumstances to put a reasonable person on inquiry, or has the opportunity to obtain knowledge from sources open to [her] investigation (such as public records or corporation books), the statute commences to run." [Citation.]'" (*Kline v. Turner* (2001) 87 Cal.App.4th 1369, 1374.)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.]. . . . In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not

14

have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox, supra,* 35 Cal.4th at pp. 808-809; see also *Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1472.)

Here, the alleged fraud occurred when Davis obtained the loan for the Mira Loma house in 2005. The SAC did not allege the date Davis discovered the fraud. Davis's bare allegation that "living in the financial industry's induced ignorance of their ponzi scheme, [she] made the monthly payments . . . through July 2009" was not sufficient to show the time and manner of discovery of the fraud and the inability to have made earlier discovery despite reasonable diligence. (*Fox, supra,* 35 Cal.4th at pp. 808-809.) This failure to adequately plead discovery in the SAC warranted granting the demurrer on the fraud cause of action because it was time-barred.

As to the UCL cause of action, Business and Professions Code § 17208 provides that "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued." The California Supreme Court has determined that UCL claims are subject to traditional accrual definitions. "Traditionally at common law, a 'cause of action accrues "when [it] is complete with all of its elements" — those elements being wrongdoing, harm, and causation.' [Citations.] This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.' [Citations.]" (*Aryeh, supra,* 55 Cal.4th at pp. 1191-1192.) "'[T]he nature of the right sued upon' [citation] and the circumstances attending its invocation control the point of accrual." (*Id.* at p. 1196.)

15

It is reasonable to determine from the complaint that the statute of limitations began to run at the time the loan was executed, which was in 2005. All the facts relating to the UCL claim pertain to misrepresentations at the time the loan was executed. As such, when Davis filed her complaint in 2012, her UCL cause of action was time-barred.

The California Supreme court has found that the respondent bears "the initial burden of proving [the plaintiff's] claims are barred by section 17208's four-year limitations period. [Citation.]" (*Aryeh, supra,* 55 Cal.4th at p. 1197.) This differs from the burden on the plaintiff, as explained *ante*, to plead discovery in the complaint for a fraud claim that appears time-barred on the face of the complaint. Wells Fargo did not demurrer to the UCL claim on the grounds of the statute of limitations.

However, on appeal, Davis has responded to this claim by stating that she could amend the complaint to show that the action accrued sometime after she executed the loan documents. Davis makes no argument that Wells Fargo failed to meet its initial burden of proving her UCL claims were time-barred or that it could not raise the claim for the first time on appeal. "An appellate court is not required to . . . make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.) This court is not required to make the argument for Davis that Wells Fargo failed to meet its burden below by raising the defense of the statute of limitations in its demurrer. The complaint on its face shows the UCL claims were time-barred. Davis has waived any irregularity in the pleadings filed in the trial court. As such, we conclude the UCL claim was time-barred.

To overcome the time-bar as to these claims, Davis "bears the burden of proving there is a reasonable possibility of amendment" to save the complaint. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.) "To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading. [Citations.]" (*Ibid.*) "Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend. [Citations.]" (*Rakestraw,* at p. 44.) Davis fails to meet that burden.

Davis has failed to assert facts that could cure the above defects in an amended complaint. She does not provide the date upon which she discovered the fraud. Rather, she provides a general statement that she could likely amend to show late discovery. Additionally, she only states that there "is no reason to believe that, as argued by Respondent, that the statute of limitations immediately began to accrue the instant Appellant executed loan documents." These conclusory allegations do not entitle her to relief in order to amend her SAC. Absent specific facts showing the time and manner of their discovery of the fraud and the circumstances excusing her delayed discovery, or the accrual date (or even a reasonable argument that the date was other than when she executed the loan) of her UCL claim, Davis's action is time-barred. Accordingly, the trial court's denial of leave to amend the SAC was not an abuse of discretion.

## IV

## DISPOSITION

We affirm the trial court's order granting the demurrer without leave to amend.

Wells Fargo is awarded its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
Acting P. J.

I concur:

KING
J.

18

MILLER, J., Concurring.

I agree with the majority's disposition. I also agree with the majority's reasoning related to the fraud and negative fraud claims. I write separately because I would affirm the sustaining of the demurrer on the unfair competition (UCL) cause of action due to a lack of standing. (Bus. & Prof. Code, § 17200.)

The majority affirms the sustaining of the demurrer on the UCL claim due to Davis exceeding the statute of limitations. I believe this reasoning is problematic due to Wells Fargo not raising the statute of limitations issue in its demurrer and Wells Fargo bearing the burden of proof on the issue. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1197 [defendant bears the burden of initially proving the statute of limitations bars a UCL claim].) In other words, I find it troublesome that the statute of limitations issue was raised for the first time in Wells Fargo's respondent's brief.

Nevertheless, I would reach the same result as the majority via the issue of standing, which was raised in the demurrer. In order to have standing to bring a UCL claim "there must be a causal connection between the harm suffered and the unlawful business activity." (*Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1099.) Davis's theory is that Wells Fargo, and the banking industry in general, were unlawfully inflating property values. Davis does not explain how constantly increasing property values caused her to lose her home.

In other words, what is missing from Davis's complaint is an explanation of how Wells Fargo caused her home to lose value and how it caused her to stop making

1

payments.  Without those allegations, Davis lacks standing for her UCL cause of action because she has not connected the foreclosure to the alleged unlawful activity.

MILLER
J.